**SIGNED THIS: July 7, 2017**

_____
                **Mary P. Gorman**
        **United States Chief Bankruptcy Judge**
_____


UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | Case No. 15-71919 |
| DANIEL C. MINER, JR., | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| NANCY J. GARGULA, | ) | |
| United States Trustee for Region 10 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 16-7038 |
| | ) | |
| DANIEL C. MINER, JR., | ) | |
| | ) | |
| Defendant. | ) | |

---

## O P I N I O N

---

This matter is before the Court following the trial of a four-count complaint

filed by the United States Trustee, Nancy J. Gargula ("UST"), objecting to the

discharge of Daniel C. Miner, Jr. ("Debtor"). Because the UST has met her burden

of proof on all four counts of her complaint, judgment will be entered in her favor

and the Debtor's discharge will be denied.

## I. Factual and Procedural Background

The Debtor filed a voluntary Chapter 13 petition and the required schedules

and Statement of Financial Affairs ("SOFA") on December 23, 2015. On his SOFA,

the Debtor stated that he had not made any gifts valued at greater than $600

within two years prepetition, had not transferred any property on account of a

debt that benefitted an insider within one year prepetition, and had not

transferred any property outside the ordinary course of business within two years

prepetition. The Debtor also said that he was not an officer of any business. At the

time of filing, the Debtor was represented by Attorney John L. GreenLeaf.

Following a meeting of creditors on February 11, 2016, John H. Germeraad,

the Chapter 13 Trustee, filed a motion to convert the case to a Chapter 7. Among

the Chapter 13 Trustee's allegations was the assertion that, on February 11, 2015,

the Debtor had transferred property located at 411 East Douglas Street,

Bloomington, Illinois ("the Douglas property"), to a corporation called "Dan Miner

Inc." The Debtor had not disclosed this transfer anywhere in his bankruptcy

filings. According to the Chapter 13 Trustee, when confronted about the transfer

at the creditors' meeting, the Debtor had explained that the transfer was to his

father's company as payment for a debt he owed to his father Daniel C. Miner, Sr.

The Debtor was not, however, able to state the value of the Douglas property or

the amount of the debt actually owed to his father. In response to the Chapter 13 Trustee's motion, the Debtor filed a motion to dismiss his case. The Chapter 13 Trustee filed an objection to the requested dismissal, asserting that the Debtor had lost his absolute right to dismiss by his misconduct.

At an initial hearing on the motion to convert, the Chapter 13 Trustee expressed concern that the Debtor had still not provided any documentation or other information related to the undisclosed transfer. The Debtor's attorney promised documents would be forthcoming. The motions to convert and to dismiss were set for an evidentiary hearing on the issue of whether the Debtor had committed misconduct that would justify conversion to Chapter 7 rather than dismissal. The day before the evidentiary hearing, the Chapter 13 Trustee filed a motion to compel because the Debtor had not provided any documentation relating to the debt purportedly owed to his father.

Before the hearing, the parties filed a stipulation of facts. They agreed that the Douglas property was worth approximately $62,370 and that the Debtor transferred it to "his father's corporation" on February 11, 2015. They stipulated that the Debtor had been held in contempt by the state court at the request of his ex-wife due to his failure to comply with the terms of their Judgment for Dissolution of Marriage and that a hearing on his motion to vacate the contempt order was set for December 29, 2015. They agreed that the Debtor first met with Attorney GreenLeaf on November 25, 2015, signed his SOFA on December 9, 2015, and filed his bankruptcy case on December 23, 2015. They stipulated that the transfer of the Douglas property was not disclosed on the SOFA and was only admitted to by the Debtor at the creditors' meeting after the Chapter 13 Trustee,

- 3 -

who had discovered the transfer through a public records search, asked about it.

At the commencement of the hearing, the Debtor admitted that he still had not provided the documentation to the Chapter 13 Trustee and requested a continuance of the hearing. His attorney promised that, if given just a few more weeks, the Debtor could produce all of the documents he had previously failed to produce after having been given several months to do so. The requested continuance was denied. The Debtor also withdrew his motion to dismiss, leaving only the motion to convert pending.

At the hearing, the Debtor testified that, although he was still searching for the documentation, he owed his father about $25,000 at the time of the transfer. He also stated that there was a contract for the sale of the Douglas property, which he had been unable to find. The Debtor testified that he did not provide documentation regarding the transfer to Mr. GreenLeaf for disclosure in his bankruptcy filings because he thought the transfer had occurred more than two years before his filing.

The Debtor also testified regarding the situation that led to his bankruptcy. The Debtor acknowledged that his now-ex-wife filed a petition for dissolution of marriage against him in 2012, and that, in 2014, a judgment was entered that required him to hold his ex-wife harmless on a mortgage on what was described as the "Mulberry" property. The Debtor admitted falling behind on the mortgage and that, as a result, his ex-wife sought to have him held in contempt. Neither the Debtor nor his attorney appeared at the hearing on his ex-wife's motion, however, and an order was entered finding the Debtor in contempt but also giving him time to purge his contempt. His attorney then filed a motion to vacate the contempt

- 4 -

order, which was set for hearing in state court on December 29, 2015. But instead of fighting the contempt order, the Debtor decided to file bankruptcy so that he could pay the mortgage delinquency over time. According to the Debtor, his divorce attorney was trying to negotiate a settlement throughout the same time period.

After hearing the evidence and arguments, the Court ordered the conversion of the case to Chapter 7, finding that the Debtor had acted in bad faith. The Court reasoned that the Debtor had transferred a substantial, unencumbered asset in February 2015—ten months before filing for bankruptcy—and failed to disclose the transfer on his SOFA. The Court noted that the Debtor did not disclose the property until the Chapter 13 Trustee confronted him about it at the creditors' meeting. Further, the Debtor took no steps to correct the error by amending his schedules or trying to get the property back from his father's company. And the Debtor had wholly failed to produce any documentation to support his claims that he owed his father money despite having been given ample time to do so.

Upon conversion, Jeffrey D. Richardson was appointed the Chapter 7 Trustee ("Trustee"). The Trustee filed a fraudulent transfer complaint against the Debtor, his brother Philip Miner, his father Dan C. Miner, Sr., and Dan Miner, Inc., to avoid the transfer of the Douglas property. A default judgment was entered against Dan Miner, Inc., for failure to respond to the complaint. The Debtor's father and brother did file an answer denying some of the material allegations of the complaint, but they admitted, among other things, the Trustee's allegation that the Debtor was the Secretary of Dan Miner, Inc. The Trustee ultimately compromised with the Debtor's father and brother by obtaining their agreement

that they would not contest the judgment avoiding the transfer of the Douglas property to Dan Miner, Inc., in exchange for the Trustee's promise not to seek further relief against either of them.

In May 2016, Mr. GreenLeaf filed a motion to withdraw from representing the Debtor due to a conflict; the motion was allowed. Before the Debtor found a substitute attorney, the UST filed her four-count complaint to deny the Debtor's discharge. Three of the counts alleged that the Debtor made false oaths in connection with his bankruptcy case and the other count alleged that he transferred the Douglas property to defraud his creditors. Shortly before the deadline to answer the UST's complaint, the Debtor retained James A. Pappas—the attorney who had previously represented him in the state court post-dissolution matters—to represent him in this matter.

A hearing on the UST's complaint was held on May 18, 2017. Phillip Miner testified that he was the president of Dan Miner, Inc., and that the company was created for the purpose of acquiring ownership of the Douglas property and receiving income from that property. He identified a copy of the articles of incorporation and acknowledged his handwriting on the document. He admitted that the Debtor had helped him complete the paperwork to incorporate Dan Miner, Inc. According to Phillip Miner, both he and his father owned 30% of the corporation and the Debtor's two minor children each owned 20%. Phillip Miner also identified the company's 2015 annual report and said that the "Daniel C. Miner" listed as the Secretary of Dan Miner, Inc., on the report referred to the

Debtor's father Daniel C. Miner, Sr., and not to the Debtor.[1]

The Debtor also testified at the hearing and said that he had purchased the Douglas property in the 1990s, before he was married, and that the property was free and clear of any mortgage. He had received rental income from the property, which he used to make improvements thereon. The Debtor identified the deed transferring the Douglas property to Dan Miner, Inc., and acknowledged his signature on the deed. He testified that the purpose of the transfer was to obtain the forgiveness of a $25,000 debt owed to his father. As evidence of the debt, the Debtor identified an invoice from his father's company, Miner Farm, dated January 1, 2015, showing a balance of $25,000 owed by the Debtor for "Parking/Storage/Loans." The Debtor provided no details of how much he owed his father's company for any of the listed services and did not explain why deeding the Douglas property to a corporation owned by not only his father but also his brother and his children served as payment of the purported debt to Miner Farm.

The Debtor denied that he was the Secretary of Dan Miner, Inc. He identified the 2015 annual report for the corporation and admitted that the corporate Secretary was listed as "Daniel C. Miner" with a mailing address of P.O. Box 31, Forsyth, Illinois. He also admitted that the post office box was a mailing address used by him and not his father. Nevertheless, he also testified that the "Daniel C. Miner" listed as Secretary of the corporation referred to his father. He admitted that the annual report separately listed Daniel C. Miner at 4316 West

---

[1] The annual report is a document required to be filed with the Illinois Secretary of State. *See* 805 ILCS 5/14.05. Both the copy of the articles of incorporation and the 2015 annual report used as exhibits at the hearing were certified copies obtained from the Secretary of State.

Bloomington Road, Champaign, Illinois, as an officer or director of the company and that his father lived at that address. He provided no explanation for why his father would have been listed twice on the annual report at two different addresses, including an address that was a post office box belonging to the Debtor and not used by his father.

With respect to the transfer of the Douglas property, the Debtor testified that he told Mr. GreenLeaf that the transfer had occurred "about two years ago." He said that Mr. GreenLeaf told him that the transfer would not need to be listed on the bankruptcy documents because it took place "right around the two year mark." He also acknowledged that he previously testified that he did not include the transfer on his schedules because he thought it had been made more than two years earlier. The Debtor complained that Mr. GreenLeaf did not provide adequate services, citing the two-week delay between the Debtor's signing his bankruptcy petition and Mr. GreenLeaf's filing it. Despite extensive questioning by his own attorney, the Debtor never identified any harm he had suffered due to the delay and did not explain how the delay was in any way connected to his failure to disclose the transfer of the Douglas property.

Attorney John GreenLeaf also testified and said that he first met with the Debtor around October 30, 2015, for a free consultation. At the time, he gave the Debtor a questionnaire to fill out that he later used to complete the Debtor's bankruptcy petition and schedules. At the initial meeting, the Debtor informed Mr. GreenLeaf of the contempt order against him, and Mr. GreenLeaf reviewed the state court docket and determined that the Debtor had 45 days to purge the contempt.

According to Mr. GreenLeaf, the Debtor informed him that he had transferred some real estate in the past but that it was more than two years earlier. Mr. GreenLeaf testified that he asked the Debtor for documents related to the property transfer but the Debtor said that, because he had just moved, he would have difficulty getting the information. The Debtor also told Mr. GreenLeaf that the transfer was for full value and that he owed his father at least $25,000. Mr. GreenLeaf did not see the deed transferring the Douglas property until after the creditors' meeting when the Chapter 13 Trustee's attorney provided him with a copy.

On November 30, 2015, the Debtor brought his completed questionnaire to a meeting with Mr. GreenLeaf, at which time the two signed a retention agreement. Mr. GreenLeaf then created the Debtor's Chapter 13 petition, SOFA, and schedules. The Debtor and Mr. GreenLeaf met again on December 9, 2015, when the documents were ready for the Debtor's signature. The Debtor signed the documents at that time, but the case was not filed on that date. According to Mr. GreenLeaf, the filing was delayed because the Debtor's state court attorney was working on a settlement of the issues that led to the contempt order. Then, on December 23, 2015, because the settlement negotiations had been fruitless and the deadline to purge the contempt order was a few days away, Mr. GreenLeaf filed the Debtor's bankruptcy petition. Mr. GreenLeaf recalled that the Debtor visited his office without an appointment several times between November 30 and the filing date, but did not recall that the Debtor had any complaints about Mr. GreenLeaf's handling of the case at that time.

Ken Siomos, staff attorney for the Chapter 13 Trustee, also testified

regarding his involvement in this case. About seven days before the scheduled Chapter 13 creditors' meeting, he performed a public records search and discovered the deed transferring the Douglas property to Dan Miner, Inc. At the creditors' meeting, the Debtor testified that he had read his SOFA and other documents before signing them. When confronted about the transfer, the Debtor testified that he transferred the Douglas property to his father's company two years before filing. Mr. Siomos recalled the Debtor testifying that the property was transferred in exchange for payments the father had made for the Debtor's attorney's fees and for improvements to the Douglas property, which totaled about $25,000. After the meeting, Mr. Siomos showed Mr. GreenLeaf and the Debtor a copy of the February 2015 deed that he had found through his public records search.

The parties offered brief argument at the end of hearing. The matter is now ready for decision.

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Central District of Illinois have been referred to the bankruptcy judges. CDIL-Bankr. LR 4.1; *see* 28 U.S.C. §157(a). Objections to discharge are core proceedings. *See* 28 U.S.C. §157(b)(2)(J). This matter arises from the Debtor's bankruptcy itself and from the provisions of the Bankruptcy Code and may therefore be constitutionally decided by a bankruptcy judge. *See Stern v. Marshall*, 564 U.S. 462, 499 (2011).

### III. Analysis

*A. Count II – Fraudulent Transfer of the Douglas Property*

Count II of the UST's complaint was brought under §727(a)(2)(A) of the Bankruptcy Code, which provides that a Chapter 7 debtor's discharge may be denied if "the debtor, with intent to hinder, delay, or defraud a creditor . . . has transferred, removed, destroyed, mutilated, or concealed . . . property of the debtor, within one year before the date of the filing of the petition[.]" 11 U.S.C. §727(a)(2)(A). A party seeking to deny a debtor's discharge must prove that the debtor made a transfer of property with an improper intent within the year before the bankruptcy was filed. *In re Kontrick*, 295 F.3d 724, 736 (7th Cir. 2002).

There is no question that the Debtor transferred the Douglas property to Dan Miner, Inc., within one year before the filing of his bankruptcy case. The only question is whether the Debtor intended to hinder, delay, or defraud his creditors. Because direct evidence of fraudulent intent is rare, courts consider the following factors as circumstantial evidence of improper intent:

> (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry.

*Vill. of San Jose v. McWilliams*, 284 F.3d 785, 791 (7th Cir. 2002) (quoting *Pavy v. Chastant (In re Chastant)*, 873 F.2d 89, 91 (5th Cir. 1989)). When a number of these

-11-

factors are established, a presumption of fraudulent intent arises, and the burden shifts to the debtor/defendant to establish proper motives for a transfer. *Id.*

Many of the relevant factors were unquestionably proven in this case. First, the consideration given for the transfer, if any, was much less than the value of the property. The Douglas property was unencumbered and worth around $62,000. It was transferred to a company to which the Debtor admittedly owed no debt. At best, the Debtor received $25,000 in debt forgiveness from his father in exchange for the property, meaning he gave, at a minimum, $37,000 more consideration than he received.

Further, although the Debtor has consistently testified that he owed a debt to his father, the Court doubts that any such debt ever existed. The Debtor testified that the balance owed on the debt was about $25,000. He described the debt as relating to storage, loans, attorney's fees, roof repairs, and other items. But the Debtor was unable to offer any evidence that the debt actually existed until after the UST filed her complaint to deny his discharge. Even then, the only substantiating documentation offered was a single-page statement from Miner Farm, which was suspiciously dated January 1, 2015, contained no itemization, and said that the amount of the debt was exactly $25,000.

Second, the property was transferred to a company that the Debtor helped create. The company was owned by family members, including the Debtor's two minor children. As will be discussed in more detail below, the Debtor was also an officer of the company; his denial that he was the "Daniel C. Miner" listed on the

2015 annual corporate report at his post office box was not credible. And if the purpose of the transfer was really to repay a debt to his father or to Miner Farm, there would have been no reason to set up a separate corporation to hold the property. Giving the Debtor's brother and children ownership of the company holding the Douglas property while maintaining a measure of control over the company served no legitimate purpose related to the payment of a debt to his father. Such actions would only serve to hinder, delay, or defraud creditors trying to collect from the Debtor.

Third, the transfer substantially impaired the Debtor's financial condition. According to his bankruptcy schedules, the Debtor's only other major, unencumbered asset was a 401(k) account worth about $46,000, which he claimed as exempt under Illinois law. *See* 735 ILCS 5/12-1006. But the Douglas property was the only substantial, non-exempt asset available for payment of the Debtor's debts and his transfer of that asset clearly was intended to negatively alter his financial condition and hinder and delay collection efforts of his creditors. The timing of the transfer is also suspicious in that it occurred around the time that the Debtor began to fall behind on his mortgage obligations on a different property and the time that the Debtor's ex-wife began to seek relief against him in state court.

Because of the proof presented by the UST, the burden shifted to the Debtor to offer a legitimate reason for his transfer of the Douglas property. But at no point did the Debtor offer a reasonable explanation for why he transferred the

Douglas property to Dan Miner, Inc., for far less than it was worth. Even if the purpose was, at least in part, to repay a legitimate debt to his father, no explanation was offered for why the Debtor's brother and children also shared in the benefits or why the Debtor gratuitously gave up the surplus equity in the property. Absent any justification for the structure and timing of the transfer of the Douglas property, this Court must conclude that the Debtor made the transfer of the Douglas property with the intent to hinder, delay, or defraud his creditors. Accordingly, the Debtor's discharge must be denied.

### B. Counts I, III & IV – False Oaths

The UST's three remaining counts objecting to the Debtor's discharge were brought under §727(a)(4)(A) of the Bankruptcy Code, which provides for the denial of a discharge if "the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account[.]" 11 U.S.C. §727(a)(4)(A). A plaintiff seeking to deny a debtor's discharge under §727(a)(4)(A) "must prove by a preponderance of the evidence that: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case." *Stamat v. Neary*, 635 F.3d 974, 978 (7th Cir. 2011). A debtor's fraudulent intent can be established by showing either intentional misrepresentations or a reckless disregard for the truth. *Id.* at 982. Statements made by a debtor on the bankruptcy petition, schedules of assets and

liabilities, or SOFA are all considered to be under oath for the purposes of §727(a)(4)(A). *John Deere Co. v. Broholm (In re Broholm)*, 310 B.R. 864, 880 (Bankr. N.D. Ill. 2004). A fact is material if it relates to the debtor's financial dealings or the existence and disposition of the debtor's property. *Stamat*, 635 F.3d at 982.

The UST alleged that the Debtor made three separate sets of false oaths in connection with this case. In Count I, the UST asserted that the omission of the transfer of the Douglas property from the Debtor's SOFA constituted a false oath. Count III alleged that the Debtor testified falsely at his creditors' meeting that he had carefully reviewed his SOFA before filing, that it was accurate to the best of his knowledge, and that he sold the Douglas property to his father's company as payment for a preexisting debt. Count IV alleged that the Debtor made a false oath in his SOFA by stating that he was not the officer of any corporation despite being an officer of Dan Miner, Inc.

As to Count I, the only disputed issue was the Debtor's intent. The Debtor admittedly did not disclose in his SOFA that he transferred the Douglas property to Dan Miner, Inc. Question 7 of the SOFA required the Debtor to identify any debts paid to an insider within one year prior to the bankruptcy. Question 13 required the Debtor to list any gifts given worth more than $600. Question 18 required him to state whether he transferred any property outside the ordinary course of business within two years before the bankruptcy filing. The transfer of the Douglas property should have been disclosed in response to all three of those questions, and the Debtor's failure to do so constituted a false oath.

The Debtor presented limited testimony and evidence in actual defense of his failure to disclose the transfer of the Douglas property; he offered nothing from which the Court could conclude that his intent was anything other than fraudulent. In large measure, his only defense was to blame Mr. GreenLeaf for not independently verifying the accuracy—or more precisely, inaccuracy—of the information he had provided to Mr. GreenLeaf. During his testimony, the Debtor frequently claimed to not know or remember the answers to the UST's attorney's basic questions, but he readily agreed with most of Mr. Pappas's leading questions. He also confirmed Mr. Pappas's descriptions of documents used as exhibits, even when Mr. Pappas misidentified the documents in his questions. And several times, the Debtor became combative, talking over attorneys' questions and volunteering what he perceived as favorable information, even when no questions were pending. Taken as a whole, the Debtor's testimony suggested that he was more interested in furthering his own narrative than in testifying truthfully and accurately. His testimony was not credible and can be given little weight.

Specifically, the Debtor's testimony regarding his interactions with Mr. GreenLeaf was not credible. The Debtor testified at trial that he told Mr. GreenLeaf that the transfer of the Douglas property had occurred about two years earlier. Yet he previously testified—before the objection to discharge was filed—that he did not list the transfer because he thought that it was *more than* two years earlier. This change in the Debtor's testimony was a transparent effort to shift the blame for the omission to Mr. GreenLeaf, who credibly testified that the transfer was not

listed because the Debtor said it had occurred more than two years earlier.

Further, given the Debtor's lack of credibility, the Court does not believe that he actually thought that, at the time of his bankruptcy filing, the transfer had been two years earlier. The better explanation is that the Debtor intentionally misled Mr. GreenLeaf so that the transfer of the Douglas property would not be listed on his SOFA in the hopes that the property would be protected from his creditors. The Debtor helped set up Dan Miner, Inc., and he transferred his major, unencumbered, non-exempt asset to that company in February 2015, less than ten months before he retained Mr. GreenLeaf to file the bankruptcy petition for him. Even an unsophisticated debtor with no business or legal training would more precisely remember the timing of such a substantial transaction.

Perhaps intended as a defense to the UST's allegation that the Debtor knowingly made false statements in his bankruptcy filings or as a mitigating factor for his misconduct, the Debtor's arguments focused on whether Mr. GreenLeaf adequately represented him at the outset of the case. Mr. Pappas accused Mr. GreenLeaf of failing in his duties as a lawyer by not performing an asset search to discover the actual date of transfer of the Douglas property and by delaying the filing of the bankruptcy petition from December 9 until December 23.

It is well-established that debtors are accountable for ensuring the accuracy of their bankruptcy petitions, schedules, and statements of financial affairs. *Torre v. Abequibel (In re Abequibel)*, 2007 WL 3085959, at *4 (Bankr. N.D. Ill. Oct. 18,

2007). They are required "to carefully consider all of the questions posed and to see that they are completely and correctly answered." *Id.* (citation omitted). Although a debtor may rely on the advice of an attorney on legal matters, that reliance must be in good faith. *In re Retz*, 606 F.3d 1189, 1199 (9th Cir. 2010) (citation omitted). "The advice of counsel is not a defense when the erroneous information should have been evident to the debtor." *Id.* (citing *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 111 (1st. Cir. 1987)) (discussing reliance on attorney in context of denying a debtor's discharge). Here, despite the accurate information being well within his knowledge, the Debtor gave Mr. GreenLeaf erroneous information about the timing of the transfer. The Debtor was responsible for the failure to disclose the transfer.

And even if an attorney's misconduct could insulate a debtor's carelessness with important bankruptcy documents, there is no indication that Mr. GreenLeaf failed in his duties in this case. A debtor's attorney is under no general duty to perform broad public records searches to ascertain whether the debtor has omitted any important information. The reason that Mr. GreenLeaf did not press more aggressively for information about the transfer of the Douglas property was because the Debtor assured him that it occurred more than two years earlier. The Debtor signed his SOFA without any reference to the transfer of the Douglas property, and he is accountable for that action.

It is also worth noting that the Debtor's testimony and his attorney's arguments regarding the purported delay in the filing of this bankruptcy case were

largely gratuitous. The two-week delay between the Debtor's signing of his petition and other documents and Mr. GreenLeaf's filing of the case had nothing to do with the accuracy of the documents or the Debtor's failure to disclose the transfer of the Douglas property. Mr. GreenLeaf credibly testified that the delay was at the Debtor's request and for the Debtor's own benefit. The Debtor was trying to settle the pending state court matters with his ex-wife, and a settlement would have obviated the need for the bankruptcy filing. The Debtor's effort to blame Mr. GreenLeaf for a delay that had absolutely nothing to do with the issues in this case demonstrates his willingness to misrepresent basic facts to protect his financial interests. Further, Mr. Pappas, who also represented the Debtor in the state court proceedings, was personally engaged in the settlement efforts that caused the delay, making his insistence on this line of argument troubling.

The Debtor failed to disclose on his SOFA that he had transferred an unencumbered, non-exempt asset for inadequate or no consideration within ten months before filing bankruptcy. In doing so, he intended to conceal the transfer from the trustees, his creditors, and the Court. Because the Debtor knowingly and fraudulently omitted information pertaining to the transfer, his discharge must be denied.

In Count III, the UST alleged that the Debtor made several separate misrepresentations at the creditors' meeting: that he carefully reviewed the SOFA and other bankruptcy documents before signing, that the information contained in those documents was true and correct, and that he sold the Douglas property

to Dan Miner, Inc., two years earlier.

As part of his effort to fault Mr. GreenLeaf for the omissions in this case, the Debtor testified that he did not review his bankruptcy documents prior to signing them. He said that Mr. GreenLeaf only asked him questions while entering the information into a computer program and he did not think Mr. GreenLeaf printed a copy of the forms for him to review and sign. But the Debtor's wet signature appears on the copy of his SOFA that was submitted into evidence, suggesting that he did, in fact, at least have the ability to review it before signing. The Debtor was either untruthful at the creditors' meeting or he was untruthful at the hearing in this case. Regardless, as discussed above, he knew at the time of the creditors' meeting that his SOFA did not disclose the transfer of the Douglas property, yet he continued to withhold that information as part of his efforts to conceal the transfer. His testimony was a false oath that supports denial of his discharge.

The final misrepresentation at the creditors' meeting—that the Debtor had sold the Douglas property two years earlier—also constituted a false oath. Contrary to Mr. Pappas's assertions, the Debtor did not volunteer information about the Douglas property at the creditors' meeting. He revealed the transfer only after being directly questioned about it, and, even then, he said he had sold the property two years earlier. As previously discussed, this was false and the Debtor knew at the time that he was misrepresenting facts about the transfer of the Douglas Property. This additional false oath also justifies a denial of the Debtor's

discharge.

The final count of the UST's complaint alleges that the Debtor made a false oath in his SOFA by stating that he was not an officer of any corporation when, in fact, he was the Secretary of Dan Miner, Inc. The Debtor and his brother both testified that the "Daniel C. Miner" listed as Secretary of the company on its 2015 annual report was the Debtor's father. Yet, when answering the Chapter 7 Trustee's fraudulent transfer complaint, the Debtor's brother and father both admitted that the Debtor was the Secretary of Dan Miner, Inc. Additionally, the signature that appears next to the title "Secretary" on the annual report matches the Debtor's signatures on his bankruptcy documents, which he acknowledged were in his own handwriting.

Two separate people named "Daniel C. Miner" are listed as officers of the company on the 2015 annual report. One used the post office box that the Debtor admitted was his personal mailing address and the other used an address in Champaign, Illinois, where the Debtor's father lived. No explanation was given for why the Debtor's father would use one address on one part of the form and a different address on a different part of the form. The only logical conclusion is that the different addresses referred to different people, one of whom was the Debtor.

The overwhelming weight of the evidence, particularly viewed in light of the Debtor's lack of credibility, supports a finding that the Debtor was the Secretary of Dan Miner, Inc. Thus, he made a false oath by stating in his SOFA that he was not an officer of any corporation. This false oath was material because it related

to the Debtor's financial dealings, and, specifically, to his efforts to retain some measure of control over property that he transferred with intent to hinder, delay, or defraud his creditors. Because the omission appears to be part of a scheme to conceal the transfer of the Douglas property from the trustees, his creditors, and the Court, the Debtor's fraudulent intent has been established. His discharge must be denied.

## IV. Conclusion

The UST has established by the preponderance of the evidence all elements needed to prevail on all counts of her complaint. Less than a year before filing bankruptcy, the Debtor transferred the Douglas property—his only substantial, unencumbered, non-exempt asset—to a family-owned company that he helped create, and of which he was a corporate officer, in order to hinder, delay, or defraud his creditors. After doing so, he concealed the transfer on his SOFA and misrepresented the timing and nature of the transfer in his testimony at the creditors' meeting. Because of these fraudulent acts and misrepresentations, judgment will be entered in favor of the UST on all four counts of her complaint and the Debtor's discharge will be denied.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###